Todd M. Friedman (216752)
Adrian R. Bacon (280332)
**Law Offices of Todd M. Friedman, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Blvd., Ste. 960
Los Angeles, CA 90028
T: (323) 940-1700
F: (323) 238-8095
Tom@mblawapc.com
Nick@mblawapc.com

*Attorneys for Plaintiff, Gabriel Barrere,*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GABRIEL BARRERE, an individual, and on behalf of others similarly situated,

        Plaintiff,

    v.

TRADER JOE'S COMPANY, a California corporation; and DOES 1 through 10, inclusive,

        Defendants.

Case No.: 2:19-cv-04297-PSG-GJS

FIRST AMENDED CLASS ACTION COMPLAINT FOR:

(1)   VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE § 17500, et. seq.

(2)   VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE § 17200, et. seq.

(3)   VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750 et. seq.

Amount to Exceed $25,000
  Jury Trial Demanded

Plaintiff Gabriel Barrere, individually and on behalf of all others similarly situated, brings this Complaint against Trader Joe's Company ("Defendant") and Does 1 through 10, inclusive (collectively referred to herein as "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.    California law recognizes that food packaging can be deceptive, even when the information on the label is truthful.  For example, if packaging is substantially larger than necessary to contain the contents, consumers may be deceived into believing that they are buying more of a product than they actually are.

2.    This is a class action lawsuit brought on behalf of all purchasers of Trader Joe's® Dried Fruit brand products (the "Product") sold at retail outlets throughout California. A true and correct representation of the Product's front label is set forth in the attached Exhibit "A", which is incorporated by reference hereto.

3.    Defendant intentionally misleads and shortchanges consumers by falsely and deceptively misleading consumers regarding the amount of dried fruit actually contained in each package of Product. Defendant uniformly and substantially under-fills the opaque packages by 69%.  Every package is filled only 31% full with of fruit product. During Plaintiff's investigation into the reason for Defendant's under-filling of the packages, which included consultation with an expert in packaging design, Plaintiff discovered that nearly all of the 69% balance of empty space, or "slack-fill," serves no legitimate or lawful function, as further described herein.

## PARTIES

4.    Plaintiff is, and at all relevant times hereto was, a citizen of California residing in the County of Los Angeles.  Plaintiff made a one-time purchase of a Trader Joe's ® 1.2 oz. package of dried fruit at the Granada Hills, CA location of its nationwide chain in 2018.  In making this purchase, Plaintiff relief upon the

opaque packaging, including the size of the package, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product.  If Plaintiff had known that the package contained non-functional slack-fill, he would not have purchased the Product, let alone paid for dried fruit product he never received.

5.     Trader Joe's Company ("Defendant") is a corporation headquartered in Monrovia, California maintains its principal business office at 800 S. Shamrock Avenue, Monrovia, CA 91016.  Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sues these individuals and/or entities by fictitious names.  Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles County.  Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

**JURISDICTION AND VENUE**

7.     This class action is brought pursuant to Federal Rule of Civil Procedure 23.  All claims in this matter arise exclusively under California law.

8.     This matter is properly venued in the United States District Court for the Central District of California, in that Plaintiff purchased the Product at a store

- 2 -
FIRST AMENDED COMPLAINT

in the Central District and resides in this District, and Defendant's principle place of business is within the Central District and Defendant does business, inter alia, in the Central District of California.

9.     Plaintiff has standing to bring this action pursuant to California False Advertising Law, Business and Professions Code Section 17500, et seq.; and California Unfair Competition Law, Business and Professions Code Section 17200, et seq.

10.    This lawsuit includes all products manufactured by Defendant which are substantially similar to Trader Joe's® 1.2 oz. packages, including all dried fruit products within the Trader-Joe's ® product lines which are packaged and sold in similar opaque packages, as there are no material differences between such products with respect to the issues raised in this action.

11.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between it and California.  Defendant removed this action to federal court and asserts that there is diversity jurisdiction under CAFA.

12.    Venue is proper in this Court because Defendant conducts business in this District, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, distribution and sale of the Product throughout this District's retail outlets, as well as distribution of print media and internet advertisements.

## FACTUAL ALLEGATIONS

13.    The average consumer spends only 13 seconds to make an in-store purchasing decision.[1]  That decision is heavily dependent on a product's packaging,

---

[1]     http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands20-second-window.html (citing Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-store and Online")

FIRST AMENDED COMPLAINT

and particularly the package dimensions: "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

14.    Research has consistently demonstrated that consumers rarely read details beyond the final price of the product, and often, not even that.[3]

15.    Container size impacts consumer perception and consumer purchase decision-making: "Packages that appear larger will be more likely to be purchased."[4]

16.    Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

17.    Non-functional slack-fill is the empty space in a package that is filled to less than its capacity for reasons which are illegitimate or unlawful.

18.    Defendant packages the Product in opaque, slack-filled packages approximately 8.5 inches tall, and approximately 6.0 inches wide.  The package is not transparent.  The package is covered with dark colored printing, and made of relatively thick plastic material such that a consumer cannot visibly see the amount of product contained inside of the packaging until such time as they open the product after purchasing it.  In addition, the Product's packaging is massively pre-filled with air, to the point where a consumer, such as Plaintiff cannot simply

---

[2] http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/product packaging/overview/product-packaging-ov.htm    (quoting    Brian    Winsink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

[3] Dickson, P. & Sawyer, G., Point of Purchase Behavior and Price Perceptions of Supermarket Shoppers, Marketing Science Institute Report No. 86-102, Cambridge, MA: Marketing Science Institute (1986).

[4] Raghubir, P. & Krishna, A., Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?, 36 Journal of Marketing Research, No. 3. 313-326 (1999).

FIRST AMENDED COMPLAINT

squeeze or compress the packaging in an attempt to reasonably determine the amount of contents, or lack thereof, contained therein.  Moreover, reasonable consumers, including Plaintiff, do not know how to mathematically calculate the density of freeze dried fruits such that they can calculate in their heads while in stores and looking at the weight of a package of Product printed on the label, how much volume of product is contained therein.

19.    The size of the package in and of itself is a representation by Defendant as to the amount of product contained in the package. Plaintiff and other consumers of the Product detrimentally and reasonably relied on this representation of quantity when they purchased the Product.

20.    Plaintiff and other consumers of the Product made their purchase decisions based upon a visual observation of the Product's packaging at a retail outlet store shelf, as the size, shape, air-filled and freeze-drive nature of the Product prevented consumers from meaningfully using their normal sensory methods of determining the value of their purchases to assess whether what they were purchasing was equivalent in value to what they were being led to believe by the misleading packaging of the Product.

21.    Plaintiff and other consumers of the Product who purchased the Product did not have a reasonable opportunity to view any other representations of quantity contained on the Product's packaging, e.g., net weight or serving disclosures.  That is because, in part, the nature of the product – lightweight freeze dried fruit, is such that very small undetectable differences in weight can actually lead to very large differences in the amount of product contained in a package. Consumers are not and cannot be reasonably be expected to be, able to internally calculate or comprehend the ratios of volume to weight of such products, given imperceptible differences in weight could have such large implications with respect to volume.  This coupled with the fact that the package is opaque and not transparent, leads consumers, such as Plaintiff, to reasonably believe that what they

are purchasing is in fact much greater in amount than their eyes and hands are able to detect, due to the manner in which Products are packaged.

22.    Even if Plaintiff and other consumers of the Product had a reasonable opportunity to review prior to the point of sale other representations of quantity like net weight or serving disclosures, such as consumers who purchased the Product at a retail outlet, they did not and would not have reasonably understood or expected it to translate to a quantity of dried fruit product meaningfully different from their expectation of a quantity of dried fruit product commensurate with the size of the packaging.

23.    Plaintiff made a one-time purchase of a package of Trader Joe's® 1.2 oz. dried fruit product during a visit to a Granada Hills, California location of Defendant's on August 21, 2018.

24.    Plaintiff paid approximately $3.95 for the Product.

25.    Research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging but without physically having the product in their hands, as in this case.[5]

26.    Plaintiff reasonably and detrimentally relied on the size of the package as a representation by Defendant of the quantity of dried fruit product contained in the Product's containers. Plaintiff was unable to determine the amount of contents of the Product when holding the packaging because of the fact that it was pre-filled with air, and because Plaintiff did not possess the inherent ability to determine the volume of product from the weight, not knowing the density of freeze dried fruit, or being able to detect the exact weight of product by feeling or viewing the packaging.

27.    Only after Plaintiff purchased the product and took it home, did Plaintiff open the top of the Product's packaging. Only then did he discover—to his

---

[5]Clement, J., Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design.

FIRST AMENDED COMPLAINT

disappointment—that the Product's package was only roughly 31% full, while the other over 69% constituted non-functional slack-fill.

28.    Prior to the point of sale, the Product's packaging does not allow for a visual or audial confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening.

29.    The other information that Defendant provides about quantity of dried fruit product on the front label and back label of the Product does not enable a consumer to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the package itself.

30.    The front label of the Product indicates a net weight of 1.2 ounces (34 grams). The nutritional panel on the back of the Product reports a serving size of 1 (34 grams) per package. True and correct representations of the Product's front and back labels are set forth below.

31.    Disclosures of net weight and serving sizes in a measurement of ounces or grams does not allow the reasonable California or American consumer to make any meaningful conclusion about the quantity of dried fruit product contained in the Product's packaging that would be different from the reasonable consumer's expectation that the quantity of dried fruit product is commensurate with the size of the package.

32.    Plaintiff would not have purchased the Product had he known the Product contained slack-fill which serves no functional or lawful purpose. Stated otherwise, if the packaging for the Product were transparent, allowing Plaintiff to visibly see the contents, he would not have purchased it, because he would have been able to see how little product was contained therein, which would have been considerably lower than what he was led to believe based on the actual appearance of Defendant's packaging of the Product.

33.    During Plaintiff's investigation, Plaintiff confirmed that Defendant uniformly and substantially under-fills the Product's packages, rendering an

extraordinary 69% of each package slack-fill, nearly all of which serves no functional or lawful purpose. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits. A true and correct representation of the inside of the Trader Joe's® package is pictured in the attached Exhibit "B", which is incorporated by reference hereto.

34. The Product is made, formed, and filled as to be misleading. The Product therefore is misbranded.

35. As described herein, the slack-fill contained in the Product does not serve a legitimate or lawful purpose.

36. As confirmed during Plaintiff's investigation, including consultation with an expert in packaging design, the slack-fill contained in the Product does not protect the contents of the packages. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits.

37. As confirmed by Plaintiff's expert in packaging design, Defendant can easily increase the quantity of dried fruit product contained in each Product container or, alternatively, decrease the size of the containers, by 69%. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits.

38. The "Nutrition Facts" panel on the back of each package states "Servings Per Container … 1.0."   By arithmetic, each serving would be the equivalent of: 100% expected total fill, divided by 1.0 servings.  Given the Product can accommodate an additional 69% of dried fruit product, consumers are being shortchanged in a commensurate percentage of servings per container of product.

39. Plaintiff did not expect that the Product would contain non-functional slack-fill, especially given that non-functional slack-fill, as opposed to functional slack-fill, is prohibited by California law and federal law.

40. Defendant's conduct threatens California consumers by using intentionally deceptive and misleading slack-filled containers. Defendant's conduct also threatens other companies, large and small, who "play by the rules."

Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

41.    There is no practical reason for the non-functional slack-fill present in the Product other than to mislead consumers as to the actual volume of the Product being purchased by consumers while simultaneously providing Defendant with a financial windfall as a result of money saved from lower supply costs.

42.    Plaintiff makes the allegations herein upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## CLASS ALLEGATIONS

43.    Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product sold by Defendant which are packaged and sold in opaque packages in the State of California during the time period from 4 years before the date of filing of this complaint, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

44.    The Class meets all prerequisites under the California Rules of Civil Procedure.

45.    The Class is so numerous that their individual joinder herein is impracticable. On information and belief, the Class numbers in the hundreds of thousands or more throughout California.  The Class is sufficiently numerous because hundreds of thousands of units of the Product have been sold in California during the time period from 4 years before the date of filing of this complaint, through the present (the "Class Period").

46.    The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

- 9 -
FIRST AMENDED COMPLAINT

a. Whether Defendant's packaging is untrue or misleading in violation of Business and Professions Code Section 17500, et seq.;

b. Whether Defendant knew or by the exercise of reasonable care should have known its packaging was and is untrue or misleading in violation of Business and Professions Code Section 17500, et seq.;

c. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, et seq.;

d. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, et seq.;

e. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, et seq.;

f. Whether Defendant's packaging is false or misleading and therefore misbranded in violation of California Health and Safety Code sections 110660, 110665, or 110670;

g. Whether the Product contain non-functional slack-fill in violation of 21 C.F.R. 100.100, et seq.;

h. Whether the Product contains non-functional slack-fill in violation of California Business and Professions Code Section 12606.2, et seq.;

i. Whether Defendant's conduct violated the California Legal Remedies Act CCP ¶¶ 1750 et. seq.;

j. Whether Plaintiff and the Class paid more money for the Product than they actually received;

k. How much money Plaintiff and the Class paid for the Product than they actually received.

47. Plaintiff's claims are typical of the claims of the Class, as the representations made by Defendant are uniform and consistent and are made through packaging that was seen and relied on by Plaintiff and the Class. Further,

- 10 -
FIRST AMENDED COMPLAINT

Plaintiff is a member of the Class he seeks to represent.

48.    Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation. Neither Plaintiff nor his counsel have any conflict of interest with other members of the Class.

49.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class.

50.    Prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

51.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.

52.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product under the false belief that the Product contained an amount of dried fruit product commensurate with the size of the package.  Plaintiff relied on Defendant's packaging and would not have purchased the Product if he had known that the Product contained non-functional slack-fill.

53.    Notice can be provided to such purchasers in a form and manner that meets Due Process requirements, including by using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspaper, direct notice and magazine.

54.    A class action is superior to other available methods for fair and

FIRST AMENDED COMPLAINT

efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

55.    The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

56.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

## COUNT ONE

**(Violation of California False Advertising Law, Business & Professions Code § 17500, *et seq.*)**

57.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

58.    Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17500, et seq., on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period from 4 years before the date of filing of this complaint, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the

Product."

59.    California's False Advertising Law, California Business and Professions Code Section 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

60.    Defendant knowingly manipulated the physical dimensions of the Product's packaging, or stated another way, under-filled the amount of dried fruit product in the Product, by including 69% non-functional slack-fill as a means to mislead the public about the amount of product contained in each package.

61.    Defendant controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care that its representations about the quantity of product contained in the Product were untrue and misleading.

62.    The general public bases its purchasing decisions on the dimensions of a product's packaging, its appearance, and the anticipated contents therein. Consumers generally do not look at any label information, such as net weight or serving disclosures.  Instead, the general public chooses a larger package because it leads them to believe they are receiving a better value.  This is especially true with respect to products that are relatively light in value in which large differences in volume are not easily detectable to a reasonable consumer.  Freeze dried fruit is one such product.

63.    Defendant's packaging with 69% non-functional slack-fill instead of including more product or smaller packages is likely to deceive the general public.

64.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

66.    Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the claims and advertising as described herein were false.

67.    Pursuant to Business and Professions Code Section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of under-filling the Product's' containers. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and/or create transparent packaging for its product.

68.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if he had known that the claims and advertising as described herein were false.

## COUNT TWO

### (Violation of California Unfair Competition Law, Business & Professions Code § 17200, et seq. )

69.    Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

70.    Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, et seq., on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in United States for personal use and not for resale during the time period from 4 years before the date of filing of this complaint, through the present. Excluded from the Class are Defendants' officers,

FIRST AMENDED COMPLAINT

directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

71.    In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period from 4 years before the date of filing of this complaint, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

72.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

73.    The FDA has implemented regulations to achieve this objective. See, e.g., 21 C.F.R. § 100.100 et seq:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;
(2) The requirements of the machines used for enclosing the contents in such package;
(3) Unavoidable product settling during shipping and handling;
(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food

- 15 -
FIRST AMENDED COMPLAINT

and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

74.    The legislature of California has incorporated 21 C.F.R. Section 100.100, which prohibits non-functional slack-fill, into California's Business and Professions Code Section 12606.2, et seq.

75.    The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.,* 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

76.    In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. See, e.g., 21 U.S.C. § 343 et. seq.

77.    Plaintiff is not suing under the FDCA, but under California state law, premised on a failure by Defendant to adhere to the requirements set forth under the FDA regulations cited herein, which are incorporated by reference under California law.

78.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

79.    The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, if the labeling does not conform with the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health &

FIRST AMENDED COMPLAINT

Safety Code §§ 110660, 110665, 110670.

80.    Business and Professions Code Section 12601 through 12615.5 are "designed to protect purchasers of any commodity within its provisions against deception or misrepresentation." Bus. & Prof. Code §12601. In order to achieve that goal, Business and Professions Code Section 12602 make it unlawful for any person engaged in the packaging or labeling of any commodity to distribute that commodity, or cause it to be distributed, if its packaging or labeling does not conform to the provisions set forth in Sections 12601-12615.5.

81.    Business and Professions Code Section 12606.2 specifically addresses the packaging requirements for food. The statute prohibits food containers which are "made, formed, or filled as to be misleading." Bus. & Prof. Code §12602.2(b). Further, the statute specifically defines as misleading and, therefore, unlawful, food containers which do not allow consumers to view their contents and which contain "non-functional slack fill." Bus. & Prof. Code § 12606.2(c).

82.    Business and Professions Code Section 12602.2(c) explains: "Non-functional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:  (1) Protection of the contents of the package.  (2) The requirements of the machines used for enclosing the contents in the package.  (3) Unavoidable product settling during shipping and handling.  (4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that is inherent to the nature of the food and is clearly communicated to consumers.  (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.  (6) Inability to increase the

- 17 -
FIRST AMENDED COMPLAINT

level of fill or to further reduce the size of the package, such as where minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamperresistant devices."

83.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice."  Cal. Bus & Prof. Code § 17200.

**"Unfair" Prong**

84.    Under California's False Advertising Law, California Business and Professions Code Section 17200, et seq., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

85.    Defendant's action of leaving 69% non-functional slack-fill in its Product does not confer any benefit to consumers.

86.    Defendant's action of leaving 69% non-functional slack-fill in its Product causes injuries to consumers because they do not receive a quantity of product commensurate with their reasonable expectation.

87.    Defendant's action of leaving 69% non-functional slack-fill in its Product causes injuries to consumers because they do not receive a level of hunger satiety commensurate with their reasonable expectation.

88.    Defendant's action of leaving 69% non-functional slack-fill in its Product causes injuries to consumers because they end up overpaying for the Product and receiving a quantity of product less than what they expected to receive.

89.    Consumers cannot avoid any of the injuries caused by the 69% non-functional slack-fill in Defendant's Product.

90.    Accordingly, the injuries caused by Defendant's activity of including 69% non-functional slack-fill in the Product outweighs any benefits.

91.    Some courts conduct a balancing test to decide if a challenged activity

amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

92.     Here, Defendant's conduct of including 69% non-functional slack-fill in the Product's packaging has no utility and financially harms purchasers.  Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

93.     Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

94.     The California legislature maintains a declared policy of prohibiting non-functional slack-fill in consumer goods, as reflected in California's Business and Professions Code Section 12606.2 and California Health and Safety Code Section 110100.

95.     The 69% of non-functional slack-fill contained in the Product is tethered to a legislative policy declared in California according to California Business and Professions Code Section 12606.2 and California Health and Safety Code Section 110100.

96.     Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

97.     Defendant knew or should have known of its unfair conduct.

98.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

99.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant

could have used packaging appropriate for the amount of product contained within the Product.

100.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

101.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of under-filling the Product's package. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign.

102.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for these products. Specifically, Plaintiff paid for 69% of product he never received. Plaintiff would not have purchased the Product if he had known that the Product's packaging contained non-functional slack-fill.

**"Fraudulent" Prong**

103.   California Business and Professions Code Section 17200, et seq., considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of Wes v. Superior Court,* 2 Cal. 4th 1254, 553 (1992).

104.   Members of the public base their purchasing decisions on the dimensions of a product's packaging. They generally do not view label information or net weight and serving disclosures. Members of the public choose a larger container because they automatically assume it has better value.

105.   Defendant's conduct of packaging the Product with 69% non-functional slack-fill is likely to deceive members of the public.

106.   Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

107.    Defendant knew or should have known of its fraudulent conduct.

108.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

109.    There were reasonable available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have used packaging appropriate for the amount of Product contained therein.

110.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

111.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of under-filling the Product's container. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign.

112.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for these products.  Specifically, Plaintiff paid for 69% of dried fruit product he never received.  Plaintiff would not have purchased the Product if he had known that the packages contained non-functional slack-fill.

**"Unlawful" Prong**

113.    California Business and Professions Code Section 17200, et seq., identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

114.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates California Business and Professions Code Section 17500, et. seq., California Civil Code §§ 1750 et. seq., California's Sherman Law, California

Business and Professions Code Section 12606.2, et seq., the FDCA, and 21 C.F.R Section 100.100.

115.   Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

116.   Defendant knew or should have known of its unlawful conduct, since Defendant intentionally approved of the design of the packaging.

117.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

118.   There were reasonable available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of product contained therein.

119.   All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

120.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of under-filling the Product's packages. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign, and/or implement transparent packaging to avoid misleading consumers.

121.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for these products.  Specifically, Plaintiff paid for 69% product he never received. Plaintiff would not have purchased the Product if he had known that the Product contained non-functional slack-fill.

///

FIRST AMENDED COMPLAINT

## COUNT THREE

### (Violation of Consumer Legal Remedies Act)

### (Cal. Civ. Code § 1750 *et seq.*)

69.    Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

70.    Defendant's actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770 to the extent that Defendant violated the following provisions of the CLRA:

a. Section 1770(a)(1) of the CLRA prohibits anyone from "[p]assing off goods or services as of those of another." As discussed above and in the enclosed complaint, Defendant made false and misleading representations about its products and services, namely the amount of dried fruit each consumer would receive in its slack-filled packages.

b. Section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." As discussed above, Defendant's acts and practices constitute misrepresentations regarding its products and services, namely the amount of dried fruit each consumer would receive in its slack-filled packages.

c. Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By falsely marketing, advertising, and representing its products and services, Defendant lead Mr. Barriere and Class Members to believe that they would receive more dried fruit than they actually did.

d. Section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised." Defendant falsely advertised and marketed its products and services, namely the amount of dried fruit each consumer would receive in its slack-filled packages.

e. Section 1770(a)(14) of the CLRA prohibits anyone from "[r]epresenting that a transaction confers or involves rights, remedies,

FIRST AMENDED COMPLAINT

or obligations which it does not have or involve….″ Defendant's acts and practices constitute misrepresentations regarding the rights, remedies, or obligations involved with its products and services, namely, the amount of dried fruit each consumer would receive in its slack-filled packages.

f. Section 1770(a)(16) of the CLRA prohibits anyone from "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Defendant misrepresented to Mr. Barriere and the Class Members the amount of dried fruit each consumer would receive in its slack-filled packages.

71. On or about March 1, 2019, through his Counsel of record, Plaintiff served Defendant with notice of its violations of the CLRA, and asked that Defendant correct, repair, replace or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendants that they must take such action within thirty three (33) calendar days, and pointed Defendants to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendants. Defendants have not replied to this correspondence, and have otherwise refused to correct, repair, replace or otherwise rectify the issues raised therein.

72. Plaintiff sent a supplemental CLRA notice letter on June 28, 2019 by certified mail, to ensure compliance with the letter of the statute. At this juncture, Plaintiff seeks only injunctive relief under the CLRA, and intends to seek damages and punitive damages via an amended complaint after any and all administrative prerequisites have been satisfied, assuming Defendant does not offer a class-wide cure in the meantime.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A. For an order certifying the class and appointing Plaintiff as class representative pursuant to the California Rules of Civil Procedure, and designating

Plaintiff's counsel as counsel for the Class;

B.      For all forms of relief set forth above;

C.      Restitution and/or disgorgement in an amount to be determined at trial;

D.      An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

E.      An order awarding Plaintiff his costs of suit incurred herein, including expert witness fee and reasonable attorneys' fees and pre and post-judgment interest, at the legal rate; and

F.      For an order granting such other and further as may be just and proper.

Date: June 27, 2019                    **The Law Offices of Todd M. Friedman, PC**

                                        By:  _/s/ Todd M. Friedman_
                                        Todd M. Friedman
                                        *Attorneys for Plaintiff*

# EXHIBIT "A"



# EXHIBIT "B"



# EXHIBIT "C"





## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 27th day of June, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 27th day of June, 2017, to:

Honorable Judge Phillip S. Gutierrez
United States District Court
Central District of California

Dawn Sestito
dsestito@omm.com
R. Collins Kilgore
ckilgore@omm.com
O'MELVENY & MYERS LLP

<u>s/ Todd M. Friedman</u>
Todd M. Friedman

FIRST AMENDED COMPLAINT